### STATE of Maine
#### v.
#### Lawrence MORSE.

Supreme Judicial Court of Maine.

Nov. 21, 1978.

---

Thomas E. Delahanty, II, Dist. Atty., R. Barrie Michelsen, Asst. Dist. Atty., Auburn, Janmarie Toker, Legal Intern (orally), for plaintiff.

Burke, Meyer & Bates by E. James Burke, Lewiston, for defendant.

Before McKUSICK, C. J. and WER-NICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

Charged by an indictment returned on February 21, 1978 with having committed, on or about February 11, 1978, the crime of Robbery, in violation of 17–A M.R.S.A. § 651(1)(B),[1] defendant was tried before a jury in April, 1978, and found guilty as charged. His appeal from the judgment of conviction claims three grounds for setting aside the conviction, each of which we have considered.

We deny the appeal, finding that we need give extended discussion to only one of the points of appeal: that the presiding Justice committed reversible error in refusing to charge the jury, as requested by defendant, that the jury had the option to decide whether or not defendant should be found guilty of "Theft by extortion", 17–A M.R.S.A. § 355,[2] as a lesser included offense

---

1. Section 651(1)(B) provides as follows:

"1. A person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions:

". . .

"B. He threatens to use force against any person present with the intent

"(1) to prevent or overcome resistance to the taking of the property, or to the retention of the property immediately after the taking; or

"(2) to compel the person in control of the property to give it up or to engage in other conduct which aids in the taking or carrying away of the property;

". . . ."

2. Section 355, as here relevant, states:

"1. A person is guilty of theft if he obtains or exercises control over the property of another as a result of extortion and with the intention to deprive him thereof.

within the indictment's charge of "Robbery."

On the evidence presented the jury was justified in finding these facts. The victim of the alleged robbery, Henry Tremblay, first met defendant in a local barroom at about 7:00 p. m. on February 11, 1978. Later, they went to Tremblay's apartment. While they were there defendant demanded money from Tremblay, after first informing him that he was a karate expert. Tremblay handed over to defendant more than $150.00 which was in a dresser drawer. Defendant further rifled the dresser, threatened to tie up Tremblay, knocked him to the floor and left. He also took with him several items of personal property, including a distinctive radio. After some hesitation, Tremblay reported the incident to the police, informing them of the false name "Larry Morrison" that defendant had given him and providing an accurate description both of defendant who had a notable red patch on his clothing and of the radio.

Defendant took the loot to the apartment of Ms. Donna Charest with whom he had been residing intermittently during the preceding months. He put the radio on the kitchen table, displayed the money, and told Ms. Charest to get a babysitter and come partying with him. In the course of the evening, defendant began to act wildly, and on the way back to Ms. Charest's apartment he broke the windshield of a parked car. Having determined to disengage herself from defendant, Ms. Charest sent defendant ahead and went looking for a police officer. She found one and told him to arrange to have defendant removed from her apartment. After verifying the existence of a broken windshield, the police went to Ms. Charest's apartment. There, the babysitter, following defendant's instructions, gave the police the false information that

defendant was not present. However, she gave the police permission to enter and look around.

The police had, by this time, made the connection between the name "Larry Morse" given them by Ms. Charest and the name "Larry Morrison" passed on to them earlier in the evening by the officers to whom Tremblay had complained. When the police came upon defendant in Ms. Charest's apartment, he was still dressed in the clothing with the red patch. The police saw in plain view on the kitchen table a radio matching the one Tremblay had described, and they arrested defendant for the robbery.

The issue we now address was raised by defendant after the presiding Justice had completed his instructions to the jury but before the jury retired to consider its verdict. Responding to the presiding Justice's inquiry whether counsel had any objections to the instructions as given or requests for additional instructions, defense counsel requested that the Justice instruct on Theft by extortion as a lesser included offense within Robbery as charged in the indictment. The rationale appears to be that the jury might decide that defendant made a threat to cause physical harm to Tremblay *in the future*, rather than in the present, and on such basis the jury should have the option to find defendant guilty of Theft by extortion instead of Robbery.

■ We decide that the presiding Justice acted correctly in refusing to give the lesser included offense instruction requested by defendant. We reach this decision without need to delve into the complex problems, arising by virtue of the Theft "consolidation" provision contained in 17–A M.R.S.A. § 351,[3] as to what offenses may be lesser

"2. As used in this section, extortion occurs when a person threatens to:
"A. Cause physical harm *in the future* to the person threatened . . . ." (emphasis supplied)

**3.** Section 351 provides:
"Conduct denominated theft in this chapter constitutes a single crime embracing the separate crimes such as those heretofore known as

larceny, larceny by trick, larceny by bailee, embezzlement, false pretenses, extortion, blackmail, shoplifting and receiving stolen property. An accusation of theft may be proved by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the information or indictment, subject only to the power of the court to

included within any of the offenses of which Theft is an essential element.

We assume, here, without deciding, that since the crime of Robbery here charged as a violation of Section 651(1)(B) contains Theft as an essential element, Theft by extortion is a lesser included offense within the crime charged. Even on this hypothesis, we conclude that the presiding Justice acted correctly. We are satisfied that a rational jury, acting rationally, could conclude from the evidence *only* that defendant made a threat of physical harm *in the present* against Tremblay, rather than in the future.

Tremblay was intimidated into turning over approximately $150.00 in money to defendant, as well as to refrain from interfering with defendant's removing other of his property from the apartment, by a threat described by Tremblay as follows:

"[H]e [defendant] said [to Tremblay], 'I got karate expert.' He [defendant] said he [defendant] was a karate expert. He [defendant] said, 'I want your money.'"

Tremblay answered: "Okay. You're a karate expert", and he then went into his bedroom and gave defendant all the money he had, over $150.00, and did not attempt to interfere when defendant began rummaging through the apartment looking for other property to take. On this evidence the only conclusion that is rational is that defendant threatened Tremblay with present physical harm: the immediate use of his presently existing karate prowess against Tremblay if Tremblay did not act as defendant then wanted him to act. So understanding defendant's threat, Tremblay immediately submitted.

 Since no rational basis existed in the evidence on which the jury could find the essential element of Theft by extortion, a threat to "cause physical harm *in the future* to the person threatened . . ." (emphasis supplied), the presiding Justice acted without error in refusing to authorize Theft by extortion as a lesser included offense option for jury decision. Under 17–A M.R.S.A. § 13(2), the Court is

". . . not required to instruct the jury concerning a lesser offense, unless on the . . . evidence there is a rational basis for the jury finding the defendant guilty of such lesser offense."

Here, the evidence provided no such rational basis.[4]

The entry is:

Appeal denied; judgment of conviction affirmed.

POMEROY and DELAHANTY, JJ., did not sit.

ensure a fair trial by granting a continuance or other appropriate relief if the conduct of the defense would be prejudiced by lack of fair notice or by surprise."

4. The other two claims on which defendant asks that the judgment of conviction be set aside, and to which we have not given extended discussion, are: (1) the distinctive radio which was in Tremblay's apartment and which was found in defendant's possession shortly after the robbery had been committed should have been suppressed, and excluded, as evidence against defendant because the police came upon it in the course of an unconstitutional search; and (2) the evidence was insufficient to support the conviction of Robbery as charged.

The search which defendant places in issue was correctly held to have been conducted consistently with defendant's rights under the 4th-14th Amendments to the Constitution of the United States. The police entered Ms. Charest's apartment with consent, and once inside they had probable cause to search the premises to find defendant. The probable cause was not dissipated merely because the babysitter had falsely stated to the police that the defendant was not on the premises. Plainly, too, the circumstances were exigent: three children were in the apartment and the police knew that defendant had been acting in a wild manner.

Defendant's claim of insufficient evidence focused on the testimony of the victim Tremblay as too confused, and confusing, to be credible. The argument fails. Tremblay's testimony was neither internally inconsistent in any of its material particulars nor inherently unworthy of belief. It was for the jury to decide what had happened, on the basis of their understanding of Mr. Tremblay's narration of events and how much of it they saw fit to accept or reject. The proof of a crime does not become fatally deficient simply because the proof of some of the essential elements of the crime is furnished by the testimony of a single witness. *State v. Tullo*, Me., 366 A.2d 843 (1976).